896 F.Supp. 996 (1995)
In re Administrative Subpoena Directed to Craig BLUNDEN, Custodian of Records, Provident Savings Bank.
No. CV 95-4299-RSWL(RMCx).
United States District Court, C.D. California.
August 18, 1995.
*997 *998 Miguel P. Inumerable, Inumerable and Inumerable, Los Angeles, CA, for movant.
Faith A. Devine, Assistant United States Attorney, Los Angeles, CA, for U.S.

MEMORANDUM DECISION AND ORDER
CHAPMAN, United States Magistrate Judge.
On June 28, 1995, Blas and Azucena Taon (hereafter "the Taons") filed a Motion to Quash the administrative subpoena duces tecum (hereafter "subpoena") served by the Department of Justice (hereafter "Government") on Craig Blunden, the custodian of records for Provident Savings Bank (hereafter "Bank"). On July 12, 1995, the Court issued an Order re Further Proceedings, requiring Government to file a sworn response to Taons' motion, and directing that the response include documentation of the receipt by the Taons of notice of the subpoena. The Court further ordered that the Taons could reply to Government's sworn response. On July 25, 1995, Government filed a response with the supporting declaration of Cynthia S. Matsumoto, a paralegal. The parties appeared for oral argument on August 16, 1995.

BACKGROUND
On June 7, 1995, Government served an administrative subpoena duces tecum by certified mail on the custodian of records for Bank, and gave notice to the Taons of the subpoena; however, the notice was not actually received by the Taons until June 13, 1995. The subpoena was "issued pursuant to 12 U.S.C. § 1833a(f)(1) in the course of an investigation to determine where there is or has been a violation of one of the enumerated provisions of Title 18 U.S.C. §§ 1014 and 1344, in connection with a loan applied for by [the Taons] from [Bank]." It ordered Bank to produce the following documents for inspection and copying:
Copies of the loan application, underwriting worksheets and memos, tax returns, conversation logs, any document relating to the loan that shows the tax returns submitted to Provident Savings Bank are false, including information obtained from the IRS and Form 4506, and any documents relating to the loan applied for by Blas A. Taon and Azucena D. Taon during November 1993. Please send a listing of other loan applications submitted to Provident Savings Bank by Mortgage City, brokerage firm, and Victor Santos and Honorato Quijano, brokers which involve possible discrepancies. Please remove all other borrowers' name from this list.
Furthermore, Bank was advised not to produce the requested documents until it had received a certification of compliance with the applicable provisions of the Right to Financial Privacy Act.
The Taons move to quash the subpoena on three grounds: (1) that the issuance of the subpoena to Bank, under the circumstances, violates the Taons' constitutional rights to privacy and against self-incrimination; (2) that the subpoena is not specific, but is a blanket demand amounting to a fishing expedition; and (3) that the documents sought are not relevant because there are no pending criminal charges or other proceedings.
Government, in its response, voluntarily strikes the second and third sentences regarding the documents Bank is to produce, thereby limiting the subpoena to documents relating to the Taons' loan application to *999 Bank. Government cites its authority under 12 U.S.C. § 1833a to issue subpoenas to investigate violations of 18 U.S.C. §§ 1014 (false statement for the purpose of influencing a lending institution) and 1344 (bank fraud), and in the declaration of Ms. Matsumoto represents that an investigation of the Taons began following Government's receipt "[i]n April of 1995, [of] a Criminal Referral Form from Provident Savings Bank reporting a suspected loan fraud by Blas and Azucena Taon in connection with the loan Mr. and Mrs. Taon applied for in November 1993." Government also asserts the Taons' Motion to Quash is untimely.

DISCUSSION
The Right to Financial Privacy Act (hereafter "RFPA"), 12 U.S.C. §§ 3401 et seq., was, in large part, passed in response to the decision in United States v. Miller, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), where the Supreme Court held that bank customers have no reasonable expectation of privacy, under the Fourth Amendment, in bank records of their accounts. Breakey v. Inspector General of the United States Dept. of Agriculture, 836 F.Supp. 422, 426 (E.D.Mich.1993). Accord: Hunt v. United States Securities & Exchange Comm., 520 F.Supp. 580, 601 (N.D.Tex.1981); Hancock v. Marshall, 86 F.R.D. 209, 210 (D.D.C.1980). RFPA "permits individuals to contest Government access to certain records held by banks and other financial institutions ... by requiring the Government authority to notify the bank customer of the subpoena or summons served on the financial institution as well as the nature of the law enforcement inquiry to which the subpoena or summons relates." Hancock, 86 F.R.D. at 210.
"[T]he requirements set forth within the Act itself are straightforward. The two salient sections of the Act are 12 U.S.C. § 3405 (Requirements for administrative subpoena and summons) and 12 U.S.C. § 3410 (Section dealing with customer challenges)." Breakey, 836 F.Supp. at 425. Section 3405 requires the subpoena to state with reasonable specificity the nature of the law enforcement inquiry. Section 3410(c) provides, in part, that the Court may quash the subpoena if it finds that the movant is a customer to whom the records sought pertain and "there is not a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry...." "The RFPA narrowly constrains the range of decisions which the Court may make with regard to motions to quash." Collins v. Commodity Futures Trading Comm., 737 F.Supp. 1467, 1478 (N.D.Ill.1990). "[W]ithin the framework of the RFPA, only three questions are relevant: (1) Is there a legitimate law enforcement inquiry; (2) are the subpoenaed bank records relevant to the inquiry; and (3) has the government agency complied with the requirements of the RFPA?" Id. at 1480.
"The ultimate burden of showing that the records sought are relevant to a legitimate law enforcement inquiry is on the government." Id. "For purposes of an administrative subpoena, the notion of relevancy is a broad one. An agency `can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not.' So long as the material "`touches a matter under investigation,'" an administrative subpoena will survive a challenge that the material is not relevant." (citations omitted.) Collins, 737 F.Supp. at 1479 (quoting Sandsend Financial Consultants, Ltd. v. Federal Home Bank Bd., 878 F.2d 875, 882 (5th Cir.1989)).
We must first consider whether the Taons' Motion to Quash is timely. Section 3410(a) permits a bank customer to file a motion to quash a subpoena "[w]ithin ten days of service or within fourteen days of mailing...." It is undisputed that the subpoena was mailed to the Taons on June 7, 1995, and that the Taons actually received the mailed subpoena on June 13, 1995. The former date requires filing of the motion to quash by June 21, 1995, and the latter date requires filing of the motion to quash by June 23, 1995. The Taons have met neither deadline, filing their Motion to Quash on June 28, 1995. Despite the untimeliness of the Motion to Quash, the Court has considered the merits of the Taons' arguments.
*1000 The first challenge, that production of the records would violate the Taons' right to privacy and their Fifth Amendment right against self-incrimination, is easily disposed of. Loan applications, with supporting documentation, are clearly bank records over which the customers[1] do not have exclusive control and in which they have only a limited expectation of privacy. See Rodriguez v. Federal Savings & Loan Ins. Corp., 712 F.Supp. 159, 164 (N.D.Cal.1989). Moreover, the Taons' privacy argument was rejected by the Supreme Court in United States v. Miller, supra, 425 U.S. at 440-43, 96 S.Ct. at 1622-25. Also see Collins, 737 F.Supp. at 1481-82. Thus, there is no merit to the Taons' position that the subpoena should be quashed on privacy grounds.
The Fifth Amendment privilege against self-incrimination has traditionally been viewed as applying only to those persons in possession of incriminating documents; it has not allowed an individual to assert the privilege against self-incrimination when the government issues subpoenas for documents to third persons. Rodriguez, 712 F.Supp. at 163. "[T]he Fifth Amendment privilege is a personal privilege: it adheres to the person, not to information that may incriminate him." Id. In other words, "any privilege the [customers] might have with regard to the documents may not be asserted since the bank rather than the [customers] is required to produce the documents." Id. Accord Collins, 737 F.Supp. at 1481. Thus, there is no merit to the Taons' assertion that their right against self-incrimination prohibits Bank's compliance with the subpoena.
The Taons' second ground for quashing the subpoena is that the request for production of documents is not specific enough, and constitutes a fishing expedition. "The statute [RFPA] requires that the nature of the inquiry be stated with sufficient specificity." Rodriguez, 712 F.Supp. at 161. As originally worded, the Taons' contention that the subpoena is not specific is correct. However, Government's striking of sentences two and three regarding the documents to be produced has sufficiently narrowed, or made specific, the scope of the subpoena duces tecum, tailoring it to documents relating solely to the Taons and their loan application to Bank. Thus, as it now exists, the request for production of documents is specific enough to withstand the Taons' challenge on this ground.
The last ground raised by the Taons is relevancy. As set forth in the subpoena, Government asserts the subpoena was issued under 12 U.S.C. § 1833a in the course of an investigation to determine whether 18 U.S.C. §§ 1014 and 1344 have been violated "in connection with a loan applied for by [the Taons] from [Bank]." The assertions in the subpoena recite the government's statutory authority for issuance of the subpoena, and refer to the Taons' loan application to Bank. This is sufficient to comply with Section 3405; but not Section 3410(c). However, the declaration of Ms. Matsumoto, attesting to the commencement of an investigation following receipt by Government of a Criminal Referral Form from Bank[2] regarding a suspected loan fraud by the Taons, is sufficient to establish a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry, as required by Section 3410(c). "[T]he phrase `reason to believe' does not mean any reason, no matter how theoretical or remote, while the phrase `legitimate law enforcement purpose' is intended to impose a standard lower than `probable cause.'" Hunt, 520 F.Supp. at 603. Government has met its burden of showing that the records sought are relevant to a legitimate law enforcement inquiry.
The Taons' argument that charges must be pending before a subpoena may issue is specious, and would seriously limit *1001 Government's authority to investigate to determine whether criminal or civil charges should be brought. There is no provision in RFPA precluding a government authority from issuing a subpoena to obtain financial documents prior to the filing of criminal or civil charges. Thus, the Taons' motion to quash on relevancy grounds is without merit.

ORDER
Blas and Azucena Taons's Motion to Quash the administrative subpoena from the Department of Justice directed to Craig Blunden, custodian of records of Provident Savings Bank, is DENIED.
NOTES
[1] The Taons half-heartedly suggest that because they do not have accounts with Bank, they are not Bank's customers. This argument is without merit. Section 3401(5) defines "customer" as "any person ... who utilized ... any service of a financial institution...." This definition is broad enough to include loan applicants.
[2] Section 3403(c) makes clear that RFPA does not preclude a financial institution from notifying a government authority that the institution has information which may be relevant to a possible violation of any statute or regulation.